UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | § § § § | |
| Plaintiff, | | |
| v. | § § § | EP-21-CV- 00191 |
| **SHAMALEY FORD and GROUP 1 AUTOMOTIVE, INC.** | § § § § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

## UNITED STATES' ORIGINAL COMPLAINT

The United States of America ("United States"), hereinafter Plaintiff, complaining of Defendants Group 1 Automotive, Inc. (Group 1) and Shamaley Ford (Shamaley) (collectively, "the Defendants") alleges as follows:

## INTRODUCTION

1. The United States Border Patrol (Border Patrol) is the primary federal law enforcement organization responsible for preventing terrorists and their weapons from entering the United States between official Customs and Border Protection ports of entry. The Border Patrol is also responsible for preventing the illicit trafficking of people and contraband between the official ports of entry.

2. Mobile Surveillance Capabilities (MSC) Units are an integral part of the system relied upon by the Border Patrol to maintain surveillance and security at our borders.

3. In late August 2019, a Border Patrol Ford F-FD F450 pick-up truck (vehicle) which had an MSC Unit mounted on its bed, was delivered (via tow truck) to the Shamaley Dealership in El Paso for purposes of diagnosis and possible repair.

4. Employees of Shamaley attempted to manually push the vehicle into the service

bay at Shamaley so that they could perform their diagnosis.

5. Due to insufficient height clearance, the MSC Unit struck the top of the service bay entrance, which ripped the MSC Unit off of its brackets, causing it to fall onto the pavement.

6. The MSC Unit sustained catastrophic damage. As a result of the actions and negligence of the officers, agents and/or employees of Shamaley, the MSC Unit has been damaged beyond repair and needs to be replaced.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345.

8. This Court has personal jurisdiction over the Defendants because the claims asserted herein are based on Defendants' actions within this District

9. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) because at least one Defendant can be found, resides, or transacts business in this district, and because a substantial part of the events giving rise to the claims herein occurred in this district.

## PARTIES

10. Plaintiff, the United States, brings this suit on behalf of the Border Patrol, a component of the United States Customs and Border Protection (CBP). CBP is an agency of the United States.

11. Defendant Shamaley is primarily a vehicle dealership which operates an automotive repair shop on its premises and staffed with its employees. It is located at 11301 Gateway West, El Paso, Texas. Shamaley may be served through its registered agent for service of process, Capitol Corporate Services, Inc, 206 E. 9th Street, Suite 1300, Austin, TX 78701-4411.

12. Defendant Group 1 is a new and used car retailer with more than 185 dealerships, 240 franchises, and about 50 collision service centers. It is located at 800 Gessner, Ste. 500,

Houston, TX 77024 and may be served through is Registered Agent for Service of Process, Capitol Corporate Services, Inc, 206 E. 9th Street, Suite 1300, Austin, TX 78701-4411. Group 1 purchased Shamaley in 2011 and owned Shamaley at all times relevant to this lawsuit.

## FACTS

13. FLIR Systems, Inc. (FLIR), is a subsidiary of Teledyne Technologies that specializes in the design and production of thermal imaging cameras and sensors. FLIR created and manufactured the MSC system purchased and utilized by the Border Patrol.

14. MSCs, which are generally mounted on - and separate from - the bed of a large pickup truck, are an integral part of the system relied upon by the Border Patrol to maintain surveillance and security at our borders. Specifically, MSCs are integrated, next-generation mobile surveillance vehicles.

15. MSC-052 is the designation for the particular MSC unit damaged by Defendants. MSC-052 was implemented in 2016 and serviced regularly. Prior to this incident, Border Patrol considered MSC-052 to be good as new and in working order.

16. MSC-052 was mounted on a Ford F-FD F450 pick up (vehicle). Attached to the dashboard of the vehicle, clearly visible to anyone operating the vehicle, is a big, bright, yellow label warning that the vehicle requires a 14-foot clearance.

17. On or about August 10, 2019, MSC-052 was operated by a member of the United States military performing surveillance in the Fort Hancock Border Patrol Station Area of Responsibility when the vehicle was struck by lightning and immobilized.

18. On or about August 14, 2019, the vehicle and the mounted MSC-052 were delivered via tow truck to Shamaley for diagnosis and possible repair of the vehicle.

19. On or about August 26, 2019, Mr. Miguel Casillas, an employee of Shamaley,

attempted to manually push and guide the vehicle, which required at least a 14-foot clearance, down an incline and through the 12-foot clearance service bay at Shamaley.

20. Due to insufficient height clearance, MSC-052 struck the top of the service bay entrance which decapitated MSC-052's sensor package and upper mast from the vehicle. The sensor package and upper mast subsequently crashed to the pavement/concrete approximately 14 feet below, sustaining catastrophic damage.

21. On or about August 26, 2019, Shamaley notified the Border Patrol, El Paso Sector, regarding the damage to MSC-052. On the same date, Border Patrol Agents from the El Paso Sector MSC shop arrived at Shamaley to assess and document the damage and remove the decapitated MSC parts for storage at El Paso Sector. The MSC-52 was removed for security purposes to protect the confidential and proprietary information contained therein.

22. On August 28, 2019, a representative from ESIS (the insurer for Shamaley) contacted Border Patrol to discuss the accident and initiated ESIS Claim #79835174700553 relating to this incident.

23. FLIR was called upon to assess the damage to MSC-052. Such assessments are made by FLIR and not the Border Patrol as FLIR is the manufacturer and has the requisite expertise to conduct such assessments and cost evaluations.

24. On October 15, 2019, FLIR generated its assessment of MSC-052 deeming it beyond economical repair and estimating the damages to the MSC-052 unit at $829,115.78 for the replacement parts and repair labor.

25. On October 29, 2019, Office of Assistant Chief Counsel, El Paso, Texas (OCC) sent ESIS a demand letter for the damage done to the MSC-052 unit. This demand was neither accepted nor rejected.

26. On November 21, 2019, Shamaley initiated a work order invoice relating to its diagnosis of the vehicle. This invoice was provided to the Border Patrol on January 15, 2020 for $1,000.00, which the Border Patrol promptly paid, in full, on January 15, 2020.

27. On January 15, 2020, ESIS retained Exponent experts, Dr. Michelle Kuykendal and Dr. Daniel Kingsley, conducted their assessment of MSC-052 at the FLIR facility located at 8165 S. Camino de Café, Tucson, Arizona 85747.

28. On April 3, 2020, after no response from ESIS or Shamaley relating to its previous demands, OCC provided ESIS with a new demand which included the cost per day for the loss of use of the MSC. This demand was neither accepted nor rejected.

29. On or about April 27, 2020, ESIS provided an incomplete version of Exponent's assessment of MSC-052 based on their January 15, 2020 inspection. To date, a full report of their assessment has not been provided to the Border Patrol.

30. On December 16, 2020, the United States, through the United States Attorney's Office sent a demand letter to Shamaley. This demand was rejected.

31. The United States has been without the use of the MSC Unit since August 26, 2019. As a result of the absence of this unit, the United States has had to allocate human resources to perform the security function previously performed by the MSC Unit. The costs for the allocation of those human resources accrues at the rate of $5,726.45 per day.

## BREACH OF BAILMENT CONTRACT

32. Plaintiff incorporates Paragraphs 1 through 34 as if fully set forth herein.

33. Defendants' automotive repair service was a bailment contract for the mutual benefit of Plaintiff, as bailor, and Defendants, as bailee. By taking temporary possession of Plaintiff's vehicle with the MSC-052 unit mounted on it, Defendants had a contractual duty to

exercise reasonably prudent care over the vehicle and the MSC-052 unit mounted on it. Defendants breached this contractual duty by allowing their employee to manually push the vehicle on an incline through a service bay door that was not tall enough to accommodate the Border Patrol vehicle with the MSC-052 unit mounted on it, causing catastrophic damage to the MSC-052 unit.

34. Pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 38.001(1), (2) and (8), and in addition to all actual and consequential damages, Plaintiff seeks the recovery of its reasonable and necessary attorney's fees. Plaintiff satisfied the claim presentment requirement of TEXAS CIVIL PRACTICE AND REMEDIES CODE § 38.002 when it delivered his settlement demand to Defendants on December 16, 2020, which Defendants rejected.

## NEGLIGENCE

35. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

36. In exchange for Plaintiff's payment of $1000, Defendants owed Plaintiff the standard of care of a reasonably prudent automobile repair shop. A reasonably prudent automobile repair shop would not have tried to push a vehicle which required a 14-foot clearance through a service bay entrance that had only a 12-foot clearance. Via the doctrine of *respondeat superior*, Defendants, through their employees, breached this standard of care, proximately causing the damages complained off and sought in this lawsuit: repair costs, towing costs, diminution in value, costs for loss of use of the MSC-052 unit, and Plaintiff's reasonable and necessary attorney's fees.

## PRAYER

32. For these reasons, Plaintiff asks that Defendants be cited to appear and answer and, on final trial, that Plaintiff be awarded a judgment against Defendants for its:

- actual, direct, and consequential, and exemplary damages;

- pre- and post-judgment interest at the highest rate allowed by law;

- reasonable and necessary attorney's fees;

- court costs; and

- all other relief, at law or in equity, to which Plaintiff is entitled.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, the United States requests a trial by jury.

Date: August 18, 2021                Respectfully submitted,

**ASHLEY C. HOFF**
United States Attorney

By:   /s/ Eduard R. Castillo
**EDUARDO R. CASTILLO**
Assistant United States Attorney
Texas Bar No. 03984803
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Tel: (915) 534-3493
Fax: (915) 534-3490
eddie.castillo@usdoj.gov

*Attorneys for the United States of America*